ZACHARY, Judge.
 

 *151
 
 Dominique Rasheed Weldon ("defendant") appeals from judgment entered on his conviction for possession of a firearm by a felon. Defendant argues that the trial court erred when it (1) admitted lay opinion testimony identifying defendant in a surveillance video,
 
 *686
 
 (2) permitted testimony in violation of Rules 404(b) and 403 of the North Carolina Rules of Evidence, and (3) determined that defendant's prior federal conviction of unlawful possession of a firearm was substantially similar to his current North Carolina conviction. For the reasons explained herein, we find no error.
 

 I. Background
 

 A Wake County grand jury indicted defendant for possession of a firearm by a felon on 4 May 2015, for habitual felon status on 21 July 2015, and for assault with a deadly weapon with intent to kill on 7 March 2016. The case was tried before a jury beginning on 21 March 2016. The relevant facts are as follows.
 

 On 23 March 2015, defendant was shot near Martin Street in Raleigh. The Raleigh Police Department responded to the shooting and found a 9-millimeter shell casing at the scene. Defendant was transported to the
 
 *152
 
 hospital where Detective Bill Nordstrom attempted to interview him. Detective Nordstrom testified that defendant "wasn't too cooperative" and that "He gave a very brief statement and told us that he didn't really need the police assistance." Defendant was released from the hospital that same day.
 

 Ten days later, on 2 April 2015, the Raleigh Police Department responded to another shooting outside some storefronts on Martin Street. Officer K. A. Thompson found six .40 caliber shell casings at the scene of the 2 April 2015 shooting. Officer Thompson also found four 9-millimeter shell casings in the parking lot across the street.
 

 Officer Thompson contacted one of the storefront property owners in order to obtain the owner's video surveillance footage of the shooting. The surveillance video shows an individual shooting a .40 caliber handgun at another individual across the street, where the four 9-millimeter shell casings were found. State Crime Lab Technician Dana Quirindongo testified that the 9-millimeter shell casings from the 23 March 2015 shooting were fired from the same 9-millimeter firearm involved in the 2 April 2015 shooting.
 

 When Officer Thompson viewed the surveillance video of the 2 April 2015 shooting, he identified defendant as the shooter. Officer Thompson testified that he had gotten to know defendant while patrolling his "beat" over the years. Officer Thompson first met defendant in 2008, and continued to have occasional encounters with him. In particular, Officer Thompson testified that he saw defendant just a few days after he was shot on 23 March 2015, about seven or eight days before the 2 April 2015 shooting, and that defendant was limping at the time. When asked how he was able to identify defendant in the 2 April 2015 surveillance video, Officer Thompson responded that he "saw in the video, especially a side profile of, of [defendant's] face and hair and clothing that he's wearing. I immediately recognized him by who he is, and then also he was limping." Officer Thompson testified that he was 100 percent certain that the individual in the surveillance footage was defendant.
 

 Officer R. S. Williams also viewed the video surveillance footage. Officer Williams testified that, while he had never had any direct contact with defendant, he knew who defendant was from his "reputation on the street[.]" Officer Williams testified that he was 100 percent certain that defendant was the individual firing the .40-caliber handgun in the surveillance video.
 

 Quentin Singletary worked at the self-service laundry in the area of the shooting. Mr. Singletary testified that he knew defendant because
 
 *153
 
 defendant would come into the laundry and that they would talk nearly every day. Mr. Singletary saw defendant when he came into the laundry on the morning of 2 April 2015. When Mr. Singletary heard the shots being fired later that day, he locked himself inside the laundry until police officers knocked on the door. Mr. Singletary let the officers in and the officers showed him the surveillance footage. Mr. Singletary identified defendant as the person shooting in the video and testified that defendant was wearing the same clothing in the video as Mr. Singletary had seen him wearing earlier that morning. Mr. Singletary also testified that defendant was limping when he saw him the morning of the 2 April 2015 shooting, and that he observed the same limp in the surveillance footage.
 

 On 24 March 2016, the jury found defendant guilty of possession of a firearm by a
 
 *687
 
 convicted felon and assault with a deadly weapon with intent to kill. However, at defendant's sentencing, after having already denied defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill, the trial court reopened the issue and dismissed that conviction on the grounds that the indictment was fatally defective for failing to name a victim. Defendant's conviction of possession of a firearm by a felon remained. Defendant stipulated to being a habitual felon.
 

 Defendant was designated as a prior record Level II for sentencing. Defendant had a prior federal conviction in 2010 for unlawful possession of a firearm. On the prior record level worksheet, defendant was given one point because all of the elements in the present charge of possession of a firearm by a convicted felon were present in a prior conviction. This point elevated defendant's sentencing level from a Level I to a Level II for purposes of sentencing as a habitual felon. Defendant was sentenced to 83 to 112 months' imprisonment. Defendant gave oral notice of appeal in open court.
 

 On appeal, defendant argues (1) that the trial court abused its discretion in allowing Officer Williams to testify as to defendant's identity in the surveillance video, (2) that the trial court committed plain error when it allowed Officer Williams to testify as to the reputation and prior bad acts of defendant, and (3) that the trial court committed reversible error when it determined that defendant's current offense of possession of a firearm by a felon was substantially similar to his prior federal conviction. After careful review, we find no error.
 

 II. Officer Williams's Identification Testimony
 

 Defendant first argues that the trial court abused its discretion by allowing Officer Williams to testify as to defendant's identity in the
 
 *154
 
 surveillance video. Defendant maintains that, because Officer Williams's familiarity with defendant was based solely on what others had told him, he was in no better position than the jury to identify defendant in the surveillance footage. We do not find this argument persuasive.
 

 A. Standard of Review
 

 A trial court's ruling on the admissibility of lay opinion testimony is reviewed for abuse of discretion.
 
 State v. Belk
 
 ,
 
 201 N.C. App. 412
 
 , 417,
 
 689 S.E.2d 439
 
 , 442 (2009) (citation omitted). A trial court abuses its discretion if the "ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Williams
 
 ,
 
 363 N.C. 689
 
 , 701,
 
 686 S.E.2d 493
 
 , 501 (2009),
 
 cert. denied
 
 ,
 
 562 U.S. 864
 
 ,
 
 131 S.Ct. 149
 
 ,
 
 178 L.Ed. 2d 90
 
 (2010) (citation and quotation marks omitted). Where the testimony at issue is the identification of a defendant as the individual depicted in surveillance footage, "we must uphold the admission of [the] lay opinion testimony if there was a rational basis for concluding that [the witness] was more likely than the jury to correctly identify [the] [d]efendant as the individual in the surveillance footage."
 
 Belk
 
 ,
 
 201 N.C. App. at 417
 
 ,
 
 689 S.E.2d at 442
 
 (citation omitted).
 

 B. Lay Opinion Identification Testimony
 

 Admissible lay opinion testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to ... the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2016). "Ordinarily, opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury."
 
 State v. Fulton
 
 ,
 
 299 N.C. 491
 
 , 494,
 
 263 S.E.2d 608
 
 , 610 (1980). "The essential question in determining the admissibility of opinion evidence is whether the witness, through study and experience, has acquired such skill that he is better qualified than the jury to form an opinion as to the subject matter to which his testimony applies."
 
 State v. Phifer
 
 ,
 
 290 N.C. 203
 
 , 213,
 
 225 S.E.2d 786
 
 , 793 (1976),
 
 cert. denied
 
 ,
 
 429 U.S. 1123
 
 ,
 
 97 S.Ct. 1160
 
 ,
 
 51 L.Ed. 2d 573
 
 (1977), (citing
 
 State v. Mitchell
 
 ,
 
 283 N.C. 462
 
 ,
 
 196 S.E.2d 736
 
 (1973) ) (other citations omitted).
 

 These same principles apply in the context of lay opinion testimony regarding the identification of a defendant as the person depicted in a surveillance video.
 
 See e.g.,
 

 *688
 

 Belk
 
 ,
 
 201 N.C. App. at 414-15
 
 ,
 
 689 S.E.2d at 441
 
 . Opinion testimony identifying a criminal defendant in a videotape is admissible " 'where such testimony is based on the perceptions and knowledge of the witness, the testimony would be helpful to the jury in the jury's fact-finding function rather than invasive of that function,
 
 *155
 
 and the helpfulness outweighs the possible prejudice to the defendant from admission of the testimony.' "
 
 Id.
 
 at 415,
 
 689 S.E.2d at 441
 
 (quoting
 
 State v. Buie
 
 ,
 
 194 N.C. App. 725
 
 , 730,
 
 671 S.E.2d 351
 
 , 354-55,
 
 disc. review denied
 
 ,
 
 363 N.C. 375
 
 ,
 
 679 S.E.2d 135
 
 -36 (2009) (internal quotation marks and citation omitted) ). However, the testimony is inadmissible if the jury is "as well qualified as the witness to draw the inference[ ] and conclusion[ ]" that the person shown in the surveillance footage is the defendant.
 
 Fulton
 
 ,
 
 299 N.C. at 494
 
 ,
 
 263 S.E.2d at 610
 
 (citation omitted). In determining the admissibility of lay opinion identification testimony, we have held that the following factors are relevant:
 

 "(1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance [video] was taken or when the defendant was dressed in a manner similar to the individual depicted in the [video]; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial."
 

 Belk,
 

 201 N.C. App. at 415
 
 ,
 
 689 S.E.2d at 441
 
 (quoting
 
 United States v. Dixon
 
 ,
 
 413 F.3d 540
 
 , 545 (6th Cir. 2005) (internal citation omitted) ) (other citations omitted). We have also noted that " '[l]ay opinion identification testimony is more likely to be admissible where the surveillance [video] ... shows only a partial view of the subject.' "
 
 Id.
 
 at 416,
 
 689 S.E.2d at 442
 
 (quoting
 
 Dixon
 
 ,
 
 413 F.3d at 545
 
 (internal citations omitted) ) (alteration omitted).
 

 C. Analysis
 

 Defendant argues that the trial court abused its discretion in allowing Officer Williams to identify defendant as the shooter in the surveillance footage because "Officer Williams had never had any actual encounters with [defendant]; he had only seen him in the community and heard from others who he was." Accordingly, defendant asserts that Officer Williams "was in no better position than the jury to" identify defendant in the video.
 

 At trial, Officer Williams testified that when he viewed the 2 April 2015 surveillance footage, he recognized the shooter in the video as defendant with "a hundred percent" certainty. While Officer Williams never "had a one-on-one discussion" with defendant, he testified that he "had seen him in the area and ... knew who he was." Officer Williams testified that he was familiar with defendant's identity because defendant had been pointed out to him on numerous occasions due to defendant's
 
 *156
 
 "reputation" in the area, and that he had observed defendant "very frequently" in the area for "at least a good two months" before defendant was shot on 23 March 2015. The day after defendant was shot, Officer Williams saw defendant coming out of a house that he was surveilling. Officer Williams stated that he was able to identify that individual as defendant because he "recognized his face," and because he had a brace on his leg and "was limping pretty bad." We conclude that these encounters would have sufficiently allowed Officer Williams to acquire the requisite familiarity with defendant's appearance so as to qualify him to testify on the subject matter of defendant's identity. The trial court did not abuse its discretion in so concluding.
 

 Moreover, defendant had altered his appearance significantly between 2 April 2015 and the date of trial. At trial, the evidence established that the length and style of defendant's hair was distinctive during the period that Officer Williams became familiar with defendant, matching that of the individual shown in the 2 April 2015 surveillance footage. However, defendant had a shaved head at trial. Thus, by the time of trial, the jury was unable to perceive the distinguishing nature of defendant's hair at the time of the shooting.
 
 Cf.
 

 Belk
 
 ,
 
 201 N.C. App. at 417
 
 ,
 
 689 S.E.2d at 442
 
 (lay witness identification inadmissible where there was "no evidence that [the] [d]efendant altered his appearance between the time of the incident and the trial"). Accordingly, in that defendant had changed his appearance since the 2 April 2015 surveillance video, not only was Officer Williams
 
 *689
 
 qualified to identity defendant in the video, but he was "
 
 better
 
 qualified than the jury" to do so.
 
 Phifer
 
 ,
 
 290 N.C. at 213
 
 ,
 
 225 S.E.2d at 793
 
 (emphasis added).
 

 Because Officer Williams was familiar with defendant's appearance, and because defendant had altered that appearance by the time of his trial, we conclude that the trial court did not abuse its discretion when it allowed Officer Williams to testify that, in his opinion, defendant was the individual depicted shooting a weapon in the 2 April 2015 surveillance video.
 

 III. Character Evidence
 

 Defendant argues next that the trial court erred when it allowed Officer Williams to testify (1) that he saw defendant coming out of a house that he was investigating for illicit drugs, and (2) that defendant had a reputation for causing problems in the area. This testimony, defendant maintains, served no purpose other than to show defendant's propensity for committing the crimes of which he was accused, and therefore was inadmissible character evidence under
 
 *157
 
 Rule 404(b) of the North Carolina Rules of Evidence. Although defendant did not object to the admission of this testimony at trial, he contends that the trial court's admission of the testimony amounted to plain error. We disagree.
 

 A. Standard of Review
 

 "We review
 
 de novo
 
 the legal conclusion that ... evidence is, or is not, within the coverage of Rule 404(b)."
 
 State v. Beckelheimer
 
 ,
 
 366 N.C. 127
 
 , 130,
 
 726 S.E.2d 156
 
 , 159 (2012). Whether evidence admissible under Rule 404(b) should nevertheless be excluded under Rule 403 "is a matter within the sound discretion of the trial court and [the court's] ruling may be reversed for an abuse of discretion only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Everhardt
 
 ,
 
 96 N.C. App. 1
 
 , 18,
 
 384 S.E.2d 562
 
 , 572 (1989) (citation and quotation marks omitted). A defendant alleging plain error has the additional burden of establishing "not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993) (citing
 
 State v. Faison
 
 ,
 
 330 N.C. 347
 
 ,
 
 411 S.E.2d 143
 
 (1991) ).
 

 B. Rule 404(b)
 

 Rule 404(b) of the North Carolina Rules of Evidence provides, in pertinent part, that:
 

 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.
 

 N.C. Gen. Stat. § 8C-1, Rule 404(b) (2016). Stated differently, " Rule 404(b) is a rule of inclusion of relevant evidence with but one exception, that is, the evidence must be excluded if its
 
 only
 
 probative value is to show that [the] defendant has the propensity or disposition to commit an offense of the nature of the crime charged."
 
 State v. Moore
 
 ,
 
 335 N.C. 567
 
 , 595,
 
 440 S.E.2d 797
 
 , 813 (1994) (citation omitted) (emphasis added).
 

 When asked whether he had seen defendant after the 23 March 2015 shooting, Officer Williams testified:
 

 I saw him, I believe it was the day after he was shot. I was dealing with a complaint about [a] house on Blatent Court. It was a drug complaint that I got from the citizens. While investigating that I saw the defendant come out of the house and get into the vehicle.
 

 *158
 
 On cross-examination, in an attempt to discredit Officer Williams's familiarity with defendant, the following exchange took place:
 

 Q. So you had never sort of had a face-to-face talk or encounter [with defendant], is that safe to say?
 

 A. Not that I can recall. There might have been an instant here and there but I can't recall.
 

 Q. Can you recall how long you even knew of [defendant] prior to this April 2nd, 2015 date?
 

 A. The reputation on the street is how I first beg[a]n associating with the defendant. I had heard his name being talked about on [the] street with people on the
 
 *690
 
 street. [Defendant] had got a reputation for causing a lot of issues in the area so I knew who he was. People had already told me who he was. I'd never had any actual direct encounters with him, but knowing who he was I'd seen him in the area.
 

 Defendant maintains that this testimony had no purpose other than to show that defendant had a propensity for committing the crimes with which he was charged, and was not relevant to prove defendant's identity, motive, opportunity, intent, preparation, plan, or knowledge. However, the Rule 404(b) list "of other purposes is nonexclusive, and thus evidence not falling within these categories may be admissible."
 
 Everhardt
 
 ,
 
 96 N.C. App. at 17
 
 ,
 
 384 S.E.2d at
 
 572 (citing
 
 State v. Morgan
 
 ,
 
 315 N.C. 626
 
 ,
 
 340 S.E.2d 84
 
 (1986) ). " Rule 404(b) permits admission of extrinsic conduct evidence so long as the evidence is relevant for some purpose other than to prove the defendant has the propensity to commit the act for which he is being tried."
 
 Id.
 
 at 17-18,
 
 384 S.E.2d at 572
 
 .
 

 The transcript in the instant case reflects that the challenged portions of Officer Williams's testimony were relevant in that they established Officer Williams's familiarity with defendant's appearance. This provided the basis for Officer Williams's ability to identify the defendant as the individual depicted in the surveillance footage. The fact that defendant had a notorious reputation in the community explained why he had been pointed out to Officer Williams on numerous occasions, why Officer Williams would have paid particular attention to him, and why he was memorable to Officer Williams. In addition, the fact that Officer Williams observed defendant during an unrelated investigation showed that Officer Williams had a particular incentive to observe defendant in detail. Accordingly, as Officer Williams's testimony explained the circumstances under which he had become familiar with defendant over
 
 *159
 
 the course of two months, his testimony was relevant for a purpose other than to establish defendant's character. Thus, Officer Williams's testimony was not impermissible character evidence under Rule 404(b), and the trial court did not err by failing to exclude it.
 

 We note, however, that while Officer Williams's observation of defendant during a surveillance assignment was relevant in order to demonstrate the basis of his familiarity with defendant's appearance, the same cannot be said for the fact that the surveillance operation was in response to "a drug complaint." The inclusion of this detail did not add to the reliability of Officer Williams's ability to identify defendant. Nonetheless, in absence of defendant's objection at trial to this testimony, we are limited to a plain error review of the issue.
 

 A showing of plain error requires that the error be " 'a
 
 fundamental
 
 error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' " or one that " 'had a probable impact on the jury's finding that the defendant was guilty.' "
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (quoting
 
 United States v. McCaskill
 
 ,
 
 676 F.2d 995
 
 , 1002 (4th Cir. 1982) (internal quotation marks omitted) ). " 'The plain error rule is always to be applied cautiously and only in the exceptional case[.]' "
 

 Id.
 

 (alterations omitted).
 

 In the present case, a review of the evidence reveals that the inclusion of this phrase did not amount to plain error. Notwithstanding the character implications of the admission of testimony that defendant was seen exiting a house that was being investigated in response to "a drug complaint," the State presented the testimony of three witnesses familiar with defendant who identified him as the individual shooting a weapon in the surveillance video. This testimony was strong enough to have supported the jury's verdict on its own. The jury was also shown defendant's distinctive hair style and told about his limp, which were both clearly visible in the surveillance footage. Moreover, the jury was presented with the circumstantial evidence of the 23 March 2015 shooting, in which defendant was shot with the same firearm that was found across the street after the 2 April 2015 shooting. Thus, the trial court's failure to exclude from the jury's consideration the fact that Officer Williams's surveillance was for "a drug complaint" did not have a probable impact on the jury's finding that defendant was guilty. Accordingly, defendant cannot establish plain error.
 

 *691
 

 C. Rule 403
 

 As to the remaining relevant portions of Officer Williams's testimony, while not in violation of Rule 404(b), the testimony must nevertheless be
 
 *160
 
 excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2016). Rule 403 is a balancing test that falls within the sound discretion of the trial court.
 
 Everhardt
 
 ,
 
 96 N.C. App. at 18
 
 ,
 
 384 S.E.2d at 572
 
 .
 

 Here, the probative value of the testimony that Officer Williams observed defendant closely during a surveillance assignment, and that he knew who defendant was because of defendant's reputation in the community, was significant. While this testimony certainly would have had some prejudicial impact on the jury, we conclude that, as the identity of the individual in the surveillance video was the crucial issue in the case, the probative value of this information was significant, and was not substantially outweighed by any undue prejudice. Accordingly, the trial court did not abuse its discretion by permitting this testimony.
 

 IV. "Substantial Similarity" of Out-of-State Offense
 

 Lastly, defendant argues that the trial court erred when it found that his prior federal conviction of unlawful possession of a firearm was substantially similar to his current North Carolina conviction of possession of a firearm by a felon because the State failed to present any evidence of substantial similarity between the two offenses. However, because the trial court's finding was, in fact, correct, we conclude that any such error was harmless.
 

 A. Standard of Review
 

 "The trial court's determination of a defendant's prior record level is a conclusion of law, which this Court reviews
 
 de novo
 
 on appeal."
 
 State v. Threadgill
 
 ,
 
 227 N.C. App. 175
 
 , 178,
 
 741 S.E.2d 677
 
 , 679-80,
 
 disc. review denied
 
 ,
 
 367 N.C. 223
 
 ,
 
 747 S.E.2d 539
 
 (2013) (citations omitted). However, whether a particular out-of-state conviction is substantially similar to a particular North Carolina offense is subject to harmless error review.
 
 State v. Riley
 
 , --- N.C. App. ----, ----,
 
 802 S.E.2d 494
 
 , 498 (2017) ;
 
 State v. Bohler
 
 ,
 
 198 N.C. App. 631
 
 , 637-38,
 
 681 S.E.2d 801
 
 , 806-07 (2009),
 
 disc. review denied
 
 , --- N.C. ----,
 
 691 S.E.2d 414
 
 (2010).
 

 B. Discussion
 

 Before sentencing a criminal defendant, the trial court must first determine the defendant's prior record level. N.C. Gen. Stat. § 15A-1340.13(b) (2016). "The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions[.]" N.C. Gen. Stat. § 15A-1340.14(a) (2016). For example, a prior offense that is classified as a Class G felony is assigned four prior record level points.
 

 *161
 
 N.C. Gen. Stat. § 15A-1340.14(3) (2016). A defendant with four prior record level points is considered a Prior Record Level II for sentencing. N.C. Gen. Stat. § 15A-1340.14(c)(2) (2016). The defendant's prior record level determines the applicable sentencing range. N.C. Gen. Stat. § 15A-1340.13(b) (2016). In addition to assigning points to each of the defendant's prior convictions based on the classification of that conviction, the trial court must assign an extra point "[i]f all the elements of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense or offenses were used in determining prior record level[.]" N.C. Gen. Stat. § 15A-1340.14(b)(6) (2016).
 

 In the instant case, defendant has not presented, and we are unable to find, any statutory or case law describing the standard for determining whether "all the elements of the present offense are included in any prior offense" under Section 1340.14(b)(6) where the prior conviction is an out-of-state offense. However, under Section 1340.14(e), "a conviction occurring in a jurisdiction other than North Carolina is classified" according to the North Carolina offense to which it is "substantially similar." N.C. Gen. Stat. § 15A-1340.14(e) (2016). Section 1340.14(e) does not explicitly provide that the "substantially similar" analysis is applicable to an out-of-state offense for purposes of assigning one extra prior record level point under Section 1340.14(b)(6). Nonetheless, the determination of whether an out-of-state offense is "substantially similar" to a North
 
 *692
 
 Carolina offense pursuant to Section 1340.14(e) "requires a comparison of [the] respective elements" of the two offenses.
 
 Riley
 
 , --- N.C. App. at ----,
 
 802 S.E.2d at
 
 498 (citing
 
 State v. Burgess
 
 ,
 
 216 N.C. App. 54
 
 , 57,
 
 715 S.E.2d 867
 
 , 870 (2011) ). Accordingly, we conclude that a finding that an out-of-state offense is substantially similar to a North Carolina offense is sufficient for a finding that the elements of the present offense are included in any prior conviction under Section 1340.14(b)(6) where the pertinent prior conviction is an out-of-state offense.
 

 The burden is on the State to establish by a preponderance of the evidence that the elements of a defendant's prior out-of-state offense are substantially similar to those of his present North Carolina offense.
 
 See
 

 Burgess
 
 ,
 
 216 N.C. App. at 57-58
 
 ,
 
 715 S.E.2d at
 
 870 ; N.C. Gen. Stat. § 15A-1340.14(e) (2016). The State "may establish the elements of the out-of-state offense by producing evidence of the applicable statute, including printed copies thereof."
 
 Riley,
 
 --- N.C. App. at ----,
 
 802 S.E.2d at
 
 498 (citing
 
 State v. Rich
 
 ,
 
 130 N.C. App. 113
 
 , 117,
 
 502 S.E.2d 49
 
 , 52 (1998) ).
 

 Here, defendant was assigned one additional record point because all of the elements of his conviction of possession of a firearm by a felon were present in a prior conviction. That point elevated
 
 *162
 
 defendant's sentencing level from Level I to Level II for purposes of sentencing as a habitual felon. While defendant stipulated that he had a prior federal conviction in 2010 for unlawful possession of a firearm pursuant to
 
 18 U.S.C. § 922
 
 (g)(1), there is no indication that the State presented copies of the relevant 2010 federal statute to the trial court in order to establish that the 2010 federal offense was substantially similar to defendant's current North Carolina conviction of possession of a firearm by a felon under
 
 N.C. Gen. Stat. § 14-415.1
 
 (a). There is also no evidence in the record that the trial court did in fact review copies of the applicable 2010 federal statute to determine whether it was substantially similar to the North Carolina statute. However, to the extent that the State fails to meet its burden of proof at sentencing, if "[t]he record contains sufficient information for this Court to determine that the federal offense of being a felon in possession of a firearm,
 
 18 U.S.C. § 922
 
 (g)(1), is substantially similar to the North Carolina offense of possession of a firearm by a felon,
 
 N.C. Gen. Stat. § 14-415.1
 
 ," the resulting error is harmless, and the defendant is not entitled to a new sentencing hearing.
 
 Riley
 
 , --- N.C. App. at ----,
 
 802 S.E.2d at 495
 
 .
 

 In
 
 State v. Riley
 
 , the defendant argued that the State failed to establish that his prior federal conviction of unlawful possession of a firearm pursuant to
 
 18 U.S.C. § 922
 
 (g)(1) was substantially similar to his present North Carolina conviction of possession of a firearm by a felon. In
 
 Riley
 
 , "there [was] no evidence that the version of § 922(g)(1) relied upon by the trial court was the same version under which [the] defendant was convicted, or if it was the most recent version, that the statute remained unchanged since [the] defendant's conviction."
 
 Riley
 
 , --- N.C. App. at ----,
 
 802 S.E.2d at 498
 
 . Nevertheless, upon examining the elements of the two offenses, this Court was able "to determine that [the] defendant's prior conviction in federal court was substantially similar" to the North Carolina crime of possession of a firearm by a felon.
 

 Id.
 

 Holding that the error was not harmless, we explained:
 

 Pursuant to
 
 18 U.S.C. § 922
 
 (g)(1), it is unlawful "for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm."
 
 18 U.S.C. § 922
 
 (g)(1) (2015). The federal offense of being a felon in possession of a firearm requires proof that (1) the defendant had been convicted of a crime punishable by more than one year in prison, (2) the defendant possessed (3) a firearm, and (4) the possession was in or affecting commerce.
 

 *163
 
 Pursuant to
 
 N.C. Gen. Stat. § 14-415.1
 
 (a), it is unlawful in North Carolina "for any person who has been convicted of a felony to ... possess ... any firearm."
 
 N.C. Gen. Stat. § 14-415.1
 
 (a) (2015). The state offense of possession of a firearm by a felon requires proof that (1) the defendant had been convicted of a felony and (2) thereafter possessed (3) a firearm....
 

 *693
 
 There are two notable differences between the offenses, the first being the "interstate commerce" element. This "jurisdictional element" requires "the government to show that a nexus exists between the firearm and the interstate commerce to obtain a conviction under § 922(g)"
 
 United States v. Wells
 
 ,
 
 98 F.3d 808
 
 , 811 (4th Cir. 1996). It "is typically satisfied by proof that the firearm ..., or parts of the firearm, were manufactured in another state or country." ... A conviction under
 
 18 U.S.C. § 922
 
 (g)(1) necessarily includes conduct which would violate
 
 N.C. Gen. Stat. § 14-415.1
 
 (a), but not vice versa. If, for example, the firearm was manufactured within the state, possessed by a felon within the same, and was not transported by any vehicle of interstate commerce, then possession would presumably fall short of conduct prohibited by § 922(g)(1). Such a situation seems unlikely, however, based upon the federal courts' broad interpretation of "in or affecting commerce." ...
 

 The second difference concerns the persons subject to punishment. The federal offense requires that the person have been previously convicted of a crime "punishable by imprisonment for a term exceeding one year," while the North Carolina offense requires that the person have been previously "convicted of a felony." A felony conviction in North Carolina is not necessarily punishable by more than one year in prison.... If convicted of a Class I felony, a defendant with a prior record level IV or higher may be imprisoned for a term exceeding one year, but a defendant with a prior record level III or lower faces only community or intermediate punishment.... Apart from this limited example, however, every other class of felony in North Carolina is punishable by imprisonment for a term exceeding one year and thus comports with the element of the federal offense.
 

 *164
 
 There may be other hypothetical scenarios which highlight the more nuanced differences between the two offenses.
 
 But the subtle distinctions do not override the almost inescapable conclusion that both offenses criminalize essentially the same conduct-the possession of firearms by disqualified felons
 
 .
 

 Id.
 

 at ----,
 
 802 S.E.2d at 498-500
 
 (some citations omitted) (emphasis added). This Court in
 
 Riley
 
 likewise noted that both
 
 18 U.S.C. § 922
 
 (g)(1) and
 
 N.C. Gen. Stat. § 14-415.1
 
 had remained unchanged between the 2012 and 2015 time period in question.
 

 Indeed, the federal offense of unlawful possession of a firearm and the North Carolina offense of possession of a firearm by a felon have remained unchanged since defendant's federal conviction in 2010.
 
 Compare
 

 18 U.S.C. § 922
 
 (g)(1) (2010)
 
 with
 

 18 U.S.C. § 922
 
 (g)(1) (2016), and
 
 N.C. Gen. Stat. § 14-415.1
 
 (2010)
 
 with
 

 N.C. Gen. Stat. § 14-415.1
 
 (2016). Because this Court has already determined that defendant's present offense is substantially similar to his federal offense, we necessarily conclude that the trial court's prior record level determination was correct.
 
 See
 

 State v. Jones
 
 ,
 
 358 N.C. 473
 
 , 487,
 
 598 S.E.2d 125
 
 , 133 (2004) (" 'Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.' ") (quoting
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ). Accordingly, any such error asserted by defendant is harmless error.
 

 V. Conclusion
 

 For the aforementioned reasons, we conclude that defendant received a fair trial free from prejudicial error.
 

 NO ERROR.
 

 Judges STROUD and ARROWOOD concur.