IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-885

 Filed: 16 April 2019

New Hanover County, Nos. 17 CRS 54155-56

STATE OF NORTH CAROLINA

 v.

KOLTON JAMES THOMPSON, Defendant.

 Appeal by defendant from judgments entered 5 April 2018 by Judge Richard

Kent Harrell in New Hanover County Superior Court. Heard in the Court of Appeals

27 March 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General John P.
 Barkley, for the State.

 James F. Hedgpeth, Jr., for defendant-appellant.

 ARROWOOD, Judge.

 Kolton James Thompson (“defendant”) appeals from judgments entered on his

convictions for assault with a deadly weapon with intent to kill inflicting serious

injury and possession of a firearm by a felon. For the reasons stated herein, we find

no error in part, and dismiss in part.

 I. Background

 A New Hanover County Grand Jury indicted defendant for assault with a

deadly weapon with intent to kill inflicting serious injury and possession of a firearm

by a felon on 31 July 2017. The matter came on for trial on 4 April 2018 in New
 STATE V. THOMPSON

 Opinion of the Court

Hanover County Superior Court, the Honorable Richard Kent Harrell presiding. The

State’s evidence tended to show as follows.

 On 7 May 2017, the Wilmington Police Department responded to a report that

a shooting had taken place at a nightclub called the Sportsman’s Club. One of the

responding officers, Officer Wade Rummings, testified that “[a] lot of people” were

“hanging around the parking lot, walking out of the club[,]” but “[e]veryone said they

didn’t see or hear anything.” However, when he canvassed the scene, Officer

Rummings “located a spent shell casing on the sidewalk leading north to the back

parking lot.” He also found a shell about five to ten feet from the shell casing.

Eventually, the officers were able to determine the victim, Angeleos Williams, had

been transported to the hospital to be treated for “a gunshot wound to his leg or

thigh.”

 The officers obtained a copy of the nightclub’s security video that recorded the

shooting. The video depicts “[a] subject[ ] walking . . . down the northwest side of the

building towards the front of the . . . business. And then, again, shortly thereafter

with the victim, walking alongside of the victim, and then the shooting occurred.”

Based on the video, Detective Lonnie Waddell (“Detective Waddell”) identified the

shooter as defendant. Detective Jeremy David Barsaleau (“Detective Barsaleau”) and

one other detective used this information to create a photo lineup that included

defendant. The lineup was shown to the victim, who did not confirm the shooter’s

 -2-
 STATE V. THOMPSON

 Opinion of the Court

identity. However, Detective Barsaleau testified the victim’s demeanor “appeared [as

though] he wanted not to really identify the suspect, that -- that he knew who he was,

but has had personal dealings with a brother of his in the past that had been killed

because he had snitched and didn’t want to become part of that as well.”

 Based upon the videotape evidence, defendant was arrested on 9 June 2017.

After his arrest, he underwent a custodial interrogation with Detective Barsaleau, a

recording of which was entered into evidence at trial. During the interview,

defendant acknowledged being present at the club the night of the shooting, but

denied shooting the victim. When Detective Barsaleau showed defendant still photos

of the surveillance video, he “dropped his head and basically said he was done.”

 The jury found defendant guilty of both charges. The trial court imposed an

active sentence of 110 to 114 months for the offense of assault with a deadly weapon

with intent to kill inflicting serious injury, and 19 to 32 months for the offense of

possession of a firearm by a felon, to run consecutively.

 Defendant appeals.

 II. Discussion

 On appeal, defendant contends the trial court committed plain error by

allowing the State: (1) to present inadmissible character evidence; and (2) to elicit

improper testimony and make improper comments during closing argument related

to defendant’s exercise of his right to remain silent.

 -3-
 STATE V. THOMPSON

 Opinion of the Court

 A. Character Evidence

 Defendant argues the trial court plainly erred by allowing the State to present

character evidence of criminal conduct that was inadmissible under Rule 404(b) of

the North Carolina Rules of Evidence, including evidence defendant had a history of

gang membership, narcotics activity, and witness intimidation. We review for plain

error because defendant did not object on this basis at trial.

 In criminal cases, an issue that was not preserved
 by objection noted at trial and that is not deemed preserved
 by rule or law without any such action nevertheless may be
 made the basis of an issue presented on appeal when the
 judicial action questioned is specifically and distinctly
 contended to amount to plain error.

N.C.R. App. P. 10(a)(4) (2019).

 “For error to constitute plain error, a defendant must demonstrate that a

fundamental error occurred at trial.” State v. Lawrence, 365 N.C. 506, 518, 723

S.E.2d 326, 334 (2012) (citation omitted). For our Court to find “that an error was

fundamental, a defendant must establish prejudice—that, after examination of the

entire record, the error had a probable impact on the jury’s finding that the defendant

was guilty.” Id. (citations and internal quotation marks omitted); see also State v.

Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (explaining plain error arises

when an error is “so basic, so prejudicial, so lacking in its elements that justice cannot

have been done[.]” (citation and quotation marks omitted)).

 Rule 404(b) of the North Carolina Rules of Evidence provides, in relevant part,

 -4-
 STATE V. THOMPSON

 Opinion of the Court

 [e]vidence of other crimes, wrongs, or acts is not admissible
 to prove the character of a person in order to show that he
 acted in conformity therewith. It may, however, be
 admissible for other purposes, such as proof of motive,
 opportunity, intent, preparation, plan, knowledge,
 identity, or absence of mistake, entrapment, or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2017). Significantly, “the Rule 404(b) list of other

purposes is nonexclusive,” as “Rule 404(b) is a rule of inclusion of relevant evidence

with but one exception, that is, the evidence must be excluded if its only probative

value is to show that [the] defendant has the propensity or disposition to commit an

offense of the nature of the crime charged.” State v. Weldon, __ N.C. App. __, __, 811

S.E.2d 683, 689-90 (2018) (citations and internal quotation marks omitted) (emphasis

in original).

 i. Narcotics

 Defendant first argues the trial court erred when it failed to exclude Detective

Waddell’s testimony that he knew defendant and “had . . . direct observations of [ ]

defendant as an interest in part of [his] job” “around the end of 2013, 2014 time

period” when he “was working vice/narcotics, and it was a narcotic-related case”

pursuant to Rule 404(b).

 Defendant supports his argument with State v. Weldon. In Weldon, an officer

testified that he had seen the defendant when he “was dealing with a complaint about

[a] house on Blatent Court. It was a drug complaint that I got from the citizens.

While investigating that I saw the defendant come out of the house and get into the

 -5-
 STATE V. THOMPSON

 Opinion of the Court

vehicle.” Weldon, __ N.C. App. at __, 811 S.E.2d at 689 (alteration in original).

Although the Court determined the “challenged portions of [the officer’s] testimony

were relevant in that they established [his] familiarity with defendant’s

appearance[,]” it also determined that the inclusion of the detail that the officer was

investigating “a drug complaint” did not add to the reliability of the officer’s

identification of defendant, and was thus inadmissible under Rule 404(b). Id. at __,

811 S.E.2d at 690. Nonetheless, Weldon determined this error did not constitute

plain error because:

 [n]otwithstanding the character implications of the
 admission of testimony that defendant was seen exiting a
 house that was being investigated in response to “a drug
 complaint,” the State presented the testimony of three
 witnesses familiar with defendant who identified him as
 the individual shooting a weapon in the surveillance video.
 This testimony was strong enough to have supported the
 jury’s verdict on its own.

Id.

 Similarly, here, the challenged testimony was relevant to establish Detective

Waddell’s familiarity with defendant’s appearance, providing the basis for his

identification of defendant as the shooter in the surveillance video. However, the

testimony also contains the detail that Detective Waddell encountered defendant

related to a narcotics case, which has negative character implications, but does not

add to the reliability of the detective’s identification of defendant. Therefore,

although the testimony admitted tending to show Detective Waddell was familiar

 -6-
 STATE V. THOMPSON

 Opinion of the Court

with defendant’s appearance was admissible under Rule 404(b) as relevant for a

purpose other than to establish defendant’s character, the detail that Detective

Waddell encountered defendant related to a narcotics case constituted error.

 Even so, this error does not constitute plain error. The State presented

surveillance video of an individual shooting the victim, and a witness familiar with

defendant, Detective Waddell, identified him as the individual in the video. As in

Weldon, this evidence is sufficient to support the jury’s verdict on its own. Thus,

defendant cannot establish plain error because he cannot show the error at issue had

a probable impact on the jury’s finding that the defendant was guilty.

 ii. Gang Membership

 Next, defendant argues the trial court plainly erred by admitting improper

character evidence of criminal conduct under Rule 404(b) of defendant’s purported

gang membership. This argument challenges the following excerpt of Detective

Waddell’s testimony:

 [DETECTIVE WADDELL]: Immediately after I saw [the
 surveillance video], I -- I said, “That’s Kolton Thompson.”

 [THE STATE]: So it was immediate?

 [DETECTIVE WADDELL]: Yes, sir.

 [THE STATE]: And -- and why was it so immediate for
 you?

 [DETECTIVE WADDELL]: Because the multiple times
 I’ve dealt with [defendant], of me knowing him, and it is

 -7-
 STATE V. THOMPSON

 Opinion of the Court

 my job to know him by who’s related to any type of gang
 activity in the city.

 [DEFENDANT]: Objection.

 THE COURT: Sustained.

As evidenced by the transcript, defendant objected to the statement regarding gang

activity at trial, and the trial court sustained the objection. Therefore, the trial court

corrected any error, and we need not address this allegation of error on appeal.

 iii. Witness Intimidation

 Defendant also challenges the following testimony of Detective Barsaleau,

which defendant argues constitutes inadmissible character evidence based on his

intimidation of the victim.

 [THE STATE]: What did you do after speaking with
 Detective Waddell and looking at that [surveillance] video?

 [DETECTIVE BARSALEAU]: I put a photo lineup
 together and went out to the hospital with another
 detective, who wasn’t familiar with the case, showed the
 victim -- the other victim -- or, excuse me -- the other
 detective showed the victim the photo lineup out at the
 hospital.

 [THE STATE]: And after doing that, did you have any
 success in further identifying --

 [DETECTIVE BARSALEAU]: No --

 [THE STATE]: -- who the shooter was?

 [DETECTIVE BARSALEAU]: -- I was not.

 -8-
 STATE V. THOMPSON

 Opinion of the Court

 [THE STATE]: Do -- how would you describe Mr. Williams’
 demeanor as you were interacting with him?

 [DETECTIVE BARSALEAU]: He appeared he wanted not
 to really identify the suspect, that -- that he knew who he
 was, but has had personal dealings with a brother of his in
 the past that had been killed because he had snitched and
 didn’t want to become part of that as well.

 [THE STATE]: On May 23rd, did you again meet with the
 victim and kind of run into the same behavior that you had
 done -- done before?

 [DETECTIVE BARSALEAU]: Yes, sir.

 Assuming arguendo this testimony suggested defendant intimidated the

victim, the testimony was not admitted in violation of Rule 404(b) because it was

relevant as an explanation for why the victim did not identify the shooter, and for

why the victim did not testify at trial. Therefore, it was admissible for a purpose

other than its negative character implications. As a result, we hold the trial court

did not plainly err by admitting this testimony into evidence.

 B. Right to Remain Silent

 Defendant argues the trial court plainly erred by allowing the prosecutor: (1)

to elicit improper testimony, and (2) to make improper comments during closing

argument related to defendant’s exercise of his right to remain silent.

 i. Detective Barsaleau’s Testimony

 -9-
 STATE V. THOMPSON

 Opinion of the Court

 We first address defendant’s allegation that the trial court plainly erred by

allowing the prosecutor to elicit improper testimony concerning defendant’s

constitutional right to remain silent.

 Defendant did not object to the admission of this testimony; therefore, he did

not preserve a constitutional question which would have entitled him to have the

error examined under the constitutional harmless beyond a reasonable doubt

framework. However, a defendant who argues that testimony to which he did not

object violated his constitutional rights is entitled to have the admission of this

testimony reviewed for plain error. State v. Moore, 366 N.C. 100, 105-06, 726 S.E.2d

168, 173 (2012) (citing N.C.R. App. P. 10(a)(4) (“In criminal cases, an issue that was

not preserved by objection . . . may be made the basis of an issue presented on appeal

when the judicial action questioned is specifically and distinctly contended to amount

to plain error.”)).

 We afford the right to silence, enshrined in the Fifth Amendment of the

Constitution of the United States, a “liberal construction in favor of the right it was

intended to secure.” Id. at 105, 726 S.E.2d at 172-73 (citations and internal quotation

marks omitted). Thus, “[e]xcept in certain limited circumstances, any comment upon

the exercise of [the right to remain silent], nothing else appearing, [is] impermissible.

An improper adverse inference of guilt from a defendant’s exercise of his right to

remain silent cannot be made, regardless of who comments on it.” Id. at 105, 726

 - 10 -
 STATE V. THOMPSON

 Opinion of the Court

S.E.2d at 172 (citations and internal quotation marks omitted) (alteration in

original). In assessing whether the admission of evidence violated this right, we do

not consider “the way in which the evidence was presented or the prosecutor’s use of

the evidence[.]” Id. at 105, 726 S.E.2d at 173. However, once we determined the

admission of the testimony at issue constituted error, we consider these factors to

determine whether the admission constituted plain error. Id.

 The testimony at issue is as follows:

 [THE STATE]: Can you describe after you read him his
 rights what you said and how he answered?

 [DETECTIVE BARSALEAU]: More or less he said that,
 yes, he was at the Sportsman’s Club that night for a
 birthday party of a friend, but denied to the shooting. I told
 him that we had the whole thing on video from the
 Sportsman’s Club. He asked to see the video. I told him I -
 - I couldn’t show him the video, but to hang tight where I
 came back with some still shots from the video. I showed
 him the still shot from the video, and he just dropped his
 head and basically said he was done.

 ....

 [THE STATE]: So these were the [still photos] where you
 said after you showed them to the defendant, he ultimately
 put his head down and said that he was done talking?

 [DETECTIVE BARSALEAU]: Yes, sir.

 [THE STATE]: Your Honor, permission to publish
 defendant’s interview to the jury.

 ....

 - 11 -
 STATE V. THOMPSON

 Opinion of the Court

 THE COURT: You can publish that to the jury.

 At the outset, we emphasize that we cannot consider this testimony in light of

the prosecutor’s statements during closing argument when assessing the threshold

question of whether the admission of the testimony constituted error, despite

defendant’s invitation to do so. See id.

 Considering Detective Barsaleau’s testimony standing alone, it is clear he

described the actions taken by defendant during the interrogation, but did not

comment on defendant’s decision to exercise his right to remain silent. Thus, the

admission of this testimony was not error, much less plain error.

 ii. Closing Argument

 We now turn to defendant’s argument that the trial court plainly erred by

allowing the prosecutor to make improper comments during closing argument related

to defendant’s exercise of his right to remain silent. Specifically, the prosecutor

referenced defendant’s decision to remain silent after seeing the stills of the

surveillance video, and asked the jury,

 [t]he defendant puts his head down after that, didn’t he?
 He put his head down on the table because he knew he was
 done. He even said, “I’m done talking.”

 At that point, the game was over for him. What does he do
 after that? Now, he has a perfect right not to say anything,
 not to be interviewed, not to testify, and every defendant
 enjoys that right in our court system.

 But if you were in an interview room and a detective was

 - 12 -
 STATE V. THOMPSON

 Opinion of the Court

 accusing you of committing this shooting and you didn’t do
 it, how would you react? Would you put your head down
 and go to sleep?

However, we are unable to review this issue on appeal.

 Our Court has held “constitutional arguments regarding closing instructions

which are not objected to are waived.” State v. Greenfield, __ N.C. App. __, __, 822

S.E.2d 477, 481 (2018) (applying this principle in the context of a defendant’s

objection to the prosecutor’s closing argument that defendant alleged invited the jury

to hold his invocation of his right to plead not guilty and to stand trial before an

impartial jury against him).1 Thus, defendant failed to preserve this argument for

appellate review. We decline to review this argument for the first time on appeal.

 Nevertheless, we find it appropriate to caution prosecutors against using

arguments similar to the one at issue in closing argument. If defendant’s challenge

had been preserved, it may well have justified a new trial for defendant.

 III. Conclusion

 For the forgoing reasons, we find no error in part, and dismiss defendant’s

argument that the trial court plainly erred by allowing the prosecutor to make

 1 We note that our Supreme Court has reviewed for violations of N.C. Gen. Stat. § 15A-1230
(2017) pursuant to the plain error standard of review in cases where an unpreserved constitutional
argument regarding closing instructions makes an argument under this statute. See State v. Phillips,
365 N.C. 103, 135, 711 S.E.2d 122, 145 (2011). However, defendant did not make an argument under
N.C. Gen. Stat. § 15A-1230, thus, we cannot review on this basis.

 - 13 -
 STATE V. THOMPSON

 Opinion of the Court

improper comments on his exercise of his right to remain silent during closing

argument.

 NO ERROR IN PART; DISMISSED IN PART.

 Judge DILLON concurs.

 Judge BRYANT concurs in the result only.

 - 14 -