ARROWOOD, Judge.
 

 *577
 
 Kolton James Thompson ("defendant") appeals from judgments entered on his convictions for assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a felon. For the reasons stated herein, we find no error in part, and dismiss in part.
 

 I.
 
 Background
 

 A New Hanover County Grand Jury indicted defendant for assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a felon on 31 July 2017. The matter came on for trial on 4 April 2018 in New Hanover County Superior Court, the Honorable Richard Kent Harrell presiding. The State's evidence tended to show as follows.
 

 On 7 May 2017, the Wilmington Police Department responded to a report that a shooting had taken place at a nightclub called the Sportsman's Club. One of the responding officers, Officer Wade Rummings, testified that "[a] lot of people" were "hanging around the parking lot, walking out of the club[,]" but "[e]veryone said they didn't see or hear anything." However, when he canvassed the scene, Officer Rummings "located a spent shell casing on the sidewalk leading north to the back parking lot." He also found a shell about five to ten feet from the shell casing. Eventually, the officers were able to determine the
 
 *578
 
 victim, Angeleos Williams, had been transported to the hospital to be treated for "a gunshot wound to his leg or thigh."
 

 The officers obtained a copy of the nightclub's security video that recorded the shooting. The video depicts "[a] subject[ ] walking ... down the northwest side of the building towards the front of the ... business. And then, again, shortly thereafter with the victim, walking alongside of the victim, and then the shooting occurred." Based on the video, Detective Lonnie Waddell ("Detective Waddell") identified the shooter as defendant. Detective Jeremy David Barsaleau ("Detective Barsaleau") and one other detective used this information to create a photo lineup that included defendant. The lineup was shown to the victim, who did not confirm the shooter's identity. However, Detective Barsaleau testified the victim's demeanor "appeared [as though] he wanted not to really identify the suspect, that -- that he knew who he was, but has had personal dealings with a brother of his in the past that had been killed because he had snitched and didn't want to become part of that as well."
 

 Based upon the videotape evidence, defendant was arrested on 9 June 2017. After his arrest, he underwent a custodial interrogation with Detective Barsaleau, a recording of which was entered into evidence at trial. During the interview, defendant acknowledged being present at the club the night of the shooting, but denied shooting the victim. When Detective Barsaleau showed defendant still photos of the surveillance video, he "dropped his head and basically said he was done."
 

 The jury found defendant guilty of both charges. The trial court imposed an active sentence of 110 to 114 months for the offense of assault with a deadly weapon with intent to kill inflicting serious injury, and 19 to 32 months for the offense of possession of a firearm by a felon, to run consecutively.
 

 Defendant appeals.
 

 *559
 
 II.
 
 Discussion
 

 On appeal, defendant contends the trial court committed plain error by allowing the State: (1) to present inadmissible character evidence; and (2) to elicit improper testimony and make improper comments during closing argument related to defendant's exercise of his right to remain silent.
 

 A.
 
 Character Evidence
 

 Defendant argues the trial court plainly erred by allowing the State to present character evidence of criminal conduct that was inadmissible
 
 *579
 
 under Rule 404(b) of the North Carolina Rules of Evidence, including evidence defendant had a history of gang membership, narcotics activity, and witness intimidation. We review for plain error because defendant did not object on this basis at trial.
 

 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 N.C.R. App. P. 10(a)(4) (2019).
 

 "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citation omitted). For our Court to find "that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 

 Id.
 

 (citations and internal quotation marks omitted);
 
 see also
 

 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (explaining plain error arises when an error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" (citation and quotation marks omitted)).
 

 Rule 404(b) of the North Carolina Rules of Evidence provides, in relevant part,
 

 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.
 

 N.C. Gen. Stat. § 8C-1, Rule 404(b) (2017). Significantly, "the Rule 404(b) list of other purposes is nonexclusive," as " Rule 404(b) is a rule of inclusion of relevant evidence with but one exception, that is, the evidence must be excluded if its
 
 only
 
 probative value is to show that [the] defendant has the propensity or disposition to commit an offense of the nature of the crime charged."
 
 State v. Weldon
 
 , --- N.C. App. ----, ----,
 
 811 S.E.2d 683
 
 , 689-90 (2018) (citations and internal quotation marks omitted) (emphasis in original).
 

 *580
 
 i.
 
 Narcotics
 

 Defendant first argues the trial court erred when it failed to exclude Detective Waddell's testimony that he knew defendant and "had ... direct observations of [ ] defendant as an interest in part of [his] job" "around the end of 2013, 2014 time period" when he "was working vice/narcotics, and it was a narcotic-related case" pursuant to Rule 404(b).
 

 Defendant supports his argument with
 
 State v. Weldon
 
 . In
 
 Weldon
 
 , an officer testified that he had seen the defendant when he "was dealing with a complaint about [a] house on Blatent Court. It was a drug complaint that I got from the citizens. While investigating that I saw the defendant come out of the house and get into the vehicle."
 
 Weldon
 
 , --- N.C. App. at ----,
 
 811 S.E.2d at 689
 
 (alteration in original). Although the Court determined the "challenged portions of [the officer's] testimony were relevant in that they established [his] familiarity with defendant's appearance[,]" it also determined that the inclusion of the detail that the officer was investigating "a drug complaint" did not add to the reliability of the officer's identification of defendant, and was thus inadmissible under Rule 404(b).
 

 Id.
 

 at ----,
 
 811 S.E.2d at 690
 
 . Nonetheless,
 
 Weldon
 
 determined this error did not constitute plain error because:
 

 [n]otwithstanding the character implications of the admission of testimony that defendant was seen exiting a house that was being investigated in response to "a drug complaint," the State presented the
 
 *560
 
 testimony of three witnesses familiar with defendant who identified him as the individual shooting a weapon in the surveillance video. This testimony was strong enough to have supported the jury's verdict on its own.
 

 Id.
 

 Similarly, here, the challenged testimony was relevant to establish Detective Waddell's familiarity with defendant's appearance, providing the basis for his identification of defendant as the shooter in the surveillance video. However, the testimony also contains the detail that Detective Waddell encountered defendant related to a narcotics case, which has negative character implications, but does not add to the reliability of the detective's identification of defendant. Therefore, although the testimony admitted tending to show Detective Waddell was familiar with defendant's appearance was admissible under Rule 404(b) as relevant for a purpose other than to establish defendant's character, the detail that Detective Waddell encountered defendant related to a narcotics case constituted error.
 

 *581
 
 Even so, this error does not constitute plain error. The State presented surveillance video of an individual shooting the victim, and a witness familiar with defendant, Detective Waddell, identified him as the individual in the video. As in
 
 Weldon
 
 , this evidence is sufficient to support the jury's verdict on its own. Thus, defendant cannot establish plain error because he cannot show the error at issue had a probable impact on the jury's finding that the defendant was guilty.
 

 ii.
 
 Gang Membership
 

 Next, defendant argues the trial court plainly erred by admitting improper character evidence of criminal conduct under Rule 404(b) of defendant's purported gang membership. This argument challenges the following excerpt of Detective Waddell's testimony:
 

 [DETECTIVE WADDELL]: Immediately after I saw [the surveillance video], I -- I said, "That's Kolton Thompson."
 

 [THE STATE]: So it was immediate?
 

 [DETECTIVE WADDELL]: Yes, sir.
 

 [THE STATE]: And -- and why was it so immediate for you?
 

 [DETECTIVE WADDELL]: Because the multiple times I've dealt with [defendant], of me knowing him, and it is my job to know him by who's related to any type of gang activity in the city.
 

 [DEFENDANT]: Objection.
 

 THE COURT: Sustained.
 

 As evidenced by the transcript, defendant objected to the statement regarding gang activity at trial, and the trial court sustained the objection. Therefore, the trial court corrected any error, and we need not address this allegation of error on appeal.
 

 iii.
 
 Witness Intimidation
 

 Defendant also challenges the following testimony of Detective Barsaleau, which defendant argues constitutes inadmissible character evidence based on his intimidation of the victim.
 

 [THE STATE]: What did you do after speaking with Detective Waddell and looking at that [surveillance] video?
 

 [DETECTIVE BARSALEAU]: I put a photo lineup together and went out to the hospital with another detective, who
 
 *582
 
 wasn't familiar with the case, showed the victim -- the other victim -- or, excuse me -- the other detective showed the victim the photo lineup out at the hospital.
 

 [THE STATE]: And after doing that, did you have any success in further identifying --
 

 [DETECTIVE BARSALEAU]: No --
 

 [THE STATE]: -- who the shooter was?
 

 [DETECTIVE BARSALEAU]: -- I was not.
 

 [THE STATE]: Do -- how would you describe Mr. Williams' demeanor as you were interacting with him?
 

 [DETECTIVE BARSALEAU]: He appeared he wanted not to really identify the suspect, that -- that he knew who he was, but has had personal dealings with a brother of his in the past that had been killed because he had snitched and didn't want to become part of that as well.
 

 *561
 
 [THE STATE]: On May 23rd, did you again meet with the victim and kind of run into the same behavior that you had done -- done before?
 

 [DETECTIVE BARSALEAU]: Yes, sir.
 

 Assuming
 
 arguendo
 
 this testimony suggested defendant intimidated the victim, the testimony was not admitted in violation of Rule 404(b) because it was relevant as an explanation for why the victim did not identify the shooter, and for why the victim did not testify at trial. Therefore, it was admissible for a purpose other than its negative character implications. As a result, we hold the trial court did not plainly err by admitting this testimony into evidence.
 

 B.
 
 Right to Remain Silent
 

 Defendant argues the trial court plainly erred by allowing the prosecutor: (1) to elicit improper testimony, and (2) to make improper comments during closing argument related to defendant's exercise of his right to remain silent.
 

 i.
 
 Detective Barsaleau's Testimony
 

 We first address defendant's allegation that the trial court plainly erred by allowing the prosecutor to elicit improper testimony from Detective Barsaleau concerning defendant's constitutional right to remain silent.
 

 *583
 
 Defendant did not object to the admission of this testimony; therefore, he did not preserve a constitutional question which would have entitled him to have the error examined under the constitutional harmless beyond a reasonable doubt framework. However, a defendant who argues that testimony to which he did not object violated his constitutional rights is entitled to have the admission of this testimony reviewed for plain error.
 
 State v. Moore
 
 ,
 
 366 N.C. 100
 
 , 105-106,
 
 726 S.E.2d 168
 
 , 173 (2012) (citing N.C.R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection ... may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.")) (citations omitted).
 

 To establish the trial court plainly erred, defendant must "demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citations and internal quotation marks omitted). "In order to ensure plain error is reserved for the exceptional case, ... plain error requires a defendant to show that the prejudicial error was one that seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."
 
 State v. Grice,
 

 367 N.C. 753
 
 , 764,
 
 767 S.E.2d 312
 
 , 321 (2015) (citation and internal quotation marks omitted).
 

 We afford the right to silence, enshrined in the Fifth Amendment of the Constitution of the United States, a "liberal construction in favor of the right it was intended to secure."
 
 Moore
 
 ,
 
 366 N.C. at 105
 
 ,
 
 726 S.E.2d at 172-73
 
 (citations and internal quotation marks omitted). Thus, "[e]xcept in certain limited circumstances, any comment upon the exercise of [the right to remain silent], nothing else appearing, [is] impermissible. An improper adverse inference of guilt from a defendant's exercise of his right to remain silent cannot be made, regardless of who comments on it."
 
 Id.
 
 at 105,
 
 726 S.E.2d at 172
 
 (citations and internal quotation marks omitted) (alterations in original).
 

 Detective Barsaleau testified as follows concerning his interview with defendant:
 

 [THE STATE]: Can you describe after you read him his rights what you said and how he answered?
 

 [DETECTIVE BARSALEAU]: More or less he said that, yes, he was at the Sportsman's Club that night for a birthday party of a friend, but denied to the shooting. I told him that we had the whole thing on video from the Sportsman's
 
 *584
 
 Club. He asked to see the video. I told him I - - I couldn't show him the video, but to hang tight where I came back with some still shots from the video. I showed him the still shot from the video, and he just dropped his head and basically said he was done.
 

 ....
 

 *562
 
 [THE STATE]: So these were the [still photos] where you said after you showed them to the defendant, he ultimately put his head down and said that he was done talking?
 

 [DETECTIVE BARSALEAU]: Yes, sir.
 

 [THE STATE]: Your Honor, permission to publish defendant's interview to the jury.
 

 ....
 

 THE COURT: You can publish that to the jury.
 

 The interview of the defendant that was published to the jury showed that, after Detective Barsaleau read defendant his
 
 Miranda
 
 rights and showed him the photographs, defendant twice stated, "I don't want to talk" while being interrogated.
 

 Assuming
 
 arguendo
 
 the prosecutor elicited improper evidence concerning defendant's invocation of his right to silence, the testimony did not constitute plain error. To assess plain error in this context, our Court considers the following factors, none of which are determinative:
 

 (1) whether the prosecutor directly elicited the improper testimony or explicitly made an improper comment; (2) whether the record contained substantial evidence of the defendant's guilt; (3) whether the defendant's credibility was successfully attacked in other ways in addition to the impermissible comment upon his or her decision to exercise his or her constitutional right to remain silent; and (4) the extent to which the prosecutor emphasized or capitalized on the improper testimony by, for example, engaging in extensive cross-examination concerning the defendant's post-arrest silence or attacking the defendant's credibility in closing argument based on his decision to refrain from making a statement to investigating officers.
 

 State v. Richardson
 
 ,
 
 226 N.C. App. 292
 
 , 302,
 
 741 S.E.2d 434
 
 , 442 (2013) (footnote omitted).
 

 *585
 
 Here, the prosecutor directly elicited the testimony. Further, the prosecutor impermissibly used this evidence in closing argument to attack defendant's credibility based on his decision to invoke his constitutional right to silence. Defendant's credibility was not otherwise successfully attacked. These factors weigh in favor of a plain error determination; however, we must also consider the substantial evidence of defendant's guilt in the record.
 
 See
 
 id.
 

 In the instant case, the evidence tends to show defendant acknowledged being at the club the night of the shooting. Law enforcement obtained a copy of security video footage from the club that showed the shooting take place. As Detective Barsaleau testified, the video showed: "[a] subject[ ] walking ... down the northwest side of the building towards the front of the ... business. And then, again, shortly thereafter with the victim, walking alongside of the victim, and then the shooting occurred." Detective Waddell was able to immediately identify the subject in the video as defendant. Both the video and still shots from the video were admitted into evidence. The strength of this evidence weighs strongly against a plain error determination.
 

 In weighing the
 
 Richardson
 
 factors it is the duty of this Court to weigh all the factors. No one of the four
 
 Richardson
 
 considerations is determinative. In addition, the fact that three factors support the defendant and only one factor supports the State is also not determinative. Where, as in the situation we have here, there is such strong uncontroverted evidence against defendant, the strength of the evidence may still support a determination of no plain error even though all the other factors weigh in defendant's favor. After an examination of the entire record, we hold that, given the video surveillance evidence described herein, the error alleged did not constitute plain error.
 

 ii.
 
 Closing Argument
 

 We now turn to defendant's argument that the trial court plainly erred by allowing the prosecutor to make improper comments during closing argument related to defendant's exercise of his right to remain silent. Specifically, the prosecutor referenced defendant's decision to remain silent after seeing the stills of the surveillance video, and asked the jury,
 

 The defendant puts his head down after that, didn't he? He put his head down on
 
 *563
 
 the table because he knew he was done. He even said, "I'm done talking."
 

 At that point, the game was over for him. What does he do after that? Now, he has a perfect right not to say anything,
 
 *586
 
 not to be interviewed, not to testify, and every defendant enjoys that right in our court system.
 

 But if you were in an interview room and a detective was accusing you of committing this shooting and you didn't do it, how would you react? Would you put your head down and go to sleep?
 

 However, we are unable to review this issue on appeal.
 

 Our Supreme Court has held that constitutional arguments regarding closing arguments which are not objected to at trial are waived.
 
 State v. Phillips
 
 ,
 
 365 N.C. 103
 
 , 135,
 
 711 S.E.2d 122
 
 , 145 (2011). Although the Supreme Court declined to review the constitutional argument in
 
 Phillips
 
 because of defendant's failure to object, the Court did review for violations of N.C. Gen. Stat. § 15A-1230 (2017) in this context.
 

 Id.
 

 Here, unlike the defendant in
 
 Phillips
 
 , defendant did not make an argument under N.C. Gen. Stat. § 15A-1230 on appeal. Accordingly, we cannot review on this basis. Thus, defendant failed to preserve this argument for appellate review. We decline to review this argument for the first time on appeal.
 

 III.
 
 Conclusion
 

 For the forgoing reasons, we find no error in part, and dismiss defendant's argument that the trial court plainly erred by allowing the prosecutor to make improper comments on his exercise of his right to remain silent during closing argument.
 

 NO ERROR IN PART; DISMISSED IN PART.
 

 Judges BRYANT and DILLON concur.