An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-778

Filed 18 June 2025

Alamance County, No. 20CRS052648-000

STATE OF NORTH CAROLINA

v.

JORGE CARDENAS

Appeal by defendant from judgments entered 8 September 2023 by Judge A. Graham Shirley in Alamance County Superior Court. Heard in the Court of Appeals 8 April 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Mary L. Lucasse, for the State.*

> *Thomas, Ferguson & Beskind, LLP, by Kellie Mannette, and The Law Offices of James D. Williams, Jr. PA, by James D. Williams, Jr., and Jordan Thomas, for defendant-appellant.*

ZACHARY, Judge.

Defendant Jorge Cardenas appeals from judgments entered upon a jury's verdicts finding him guilty of first-degree statutory sex offense and taking indecent liberties with a child. On appeal, Defendant argues that the trial court 1) committed plain error by admitting unchallenged testimony describing his sexual abuse of

another victim, and 2) erred by admitting the improper lay-opinion testimony of a police detective. After careful review, we conclude that Defendant received a fair trial, free from error.

## I. Background

On 7 July 2021, an Alamance County grand jury indicted Defendant for two counts of first-degree statutory sex offense and one count of taking indecent liberties with a child.[1] A final superseding indictment was issued on 3 July 2023, charging Defendant with first-degree statutory sex offense, sexual offense with a child, and taking indecent liberties with a child.

Defendant's case came on for jury trial in Alamance County Superior Court on 29 August 2023. The evidence presented at trial tended to show the following:

In 2013 and repeatedly in 2015, Defendant sexually abused his stepdaughter, Kasey,[2] by groping her. However, after Kasey's mother and school counselor were alerted to these allegations, Kasey recanted her statements. Thereafter, the sexual abuse continued and progressed. On numerous occasions, Defendant "lick[ed] [Kasey's] vagina" while she was "[p]retending to sleep." Once, as Kasey "tried to get up, [Defendant] grabbed [her] thighs and . . . held [her] down." Defendant also "would slap [Kasey's] butt [while] walking." Another time, Defendant "grabbed [Kasey's]

---

[1] On 10 October 2022, an Alamance County grand jury issued a superseding indictment for the same charges.

[2] To protect their identities, we refer to the minor children by the pseudonyms agreed to by the parties. *See* N.C.R. App. P. 42(b).

hand and put it inside his underwear . . . [o]n his penis."

In 2016, Kasey reported the sexual abuse to her mother and other members of her family. The authorities were alerted and Kasey underwent a forensic interview with Det. Underwood of the Burlington Police Department ("BPD") Special Victims Unit at CrossRoads.[3] During her forensic interview, Kasey stated that Defendant "touched her in the private part." Det. Underwood also interviewed Defendant, who asserted that he "would never hurt any of [his] children."

While the matter was under investigation, Kasey's mother informed Det. Underwood that Kasey had fully recanted her allegations. Accordingly, Defendant was not criminally charged, but a safety plan was put into place. Nevertheless, "[s]ix months or a year" after the initial CrossRoads interview was conducted, Defendant again "returned to touching" Kasey. Defendant continued "[t]he touching and the licking," including "[t]he touching underneath [Kasey's] underwear and [her] pants" until October 2019.

Kasey warned her best friend, Brittany, who was often at Defendant's house, to avoid Defendant. In May 2020, when Kasey was 15 years old and Brittany was 17 years old, Defendant sexually abused Brittany by putting his hand inside her clothes, "rubbing across [her] vagina," and groping her breasts. At the time, Brittany "was laying there just scared."

---

[3] CrossRoads is a "sexual assault resource response center" that also serves, in part, as "a child advocacy center for children that have been abused or neglected."

The next month, Brittany told her mother about Defendant's sexual abuse; Brittany's mother contacted the BPD and reported that Brittany and Kasey had been sexually abused by Defendant. Both girls underwent forensic interviews at CrossRoads where they reported Defendant's sexual abuse to Det. Sisk, a BPD Special Victims Unit detective.

During Kasey's forensic interview, she told Det. Sisk that because she had a history of telling "little white lies," she expected that her family would not believe her allegations of sexual abuse. At trial, Kasey testified that after her disclosure in 2020, she "d[id]n't really have [her] family" and her once-close relationship with her mother "fell off."

On 8 September 2023, the jury returned its verdicts finding Defendant guilty of first-degree statutory sex offense and taking indecent liberties with a child, but not guilty of sexual offense with a child. The trial court entered judgments sentencing Defendant to a term of 240 to 348 months' imprisonment in the custody of the North Carolina Department of Adult Correction for his conviction for first-degree statutory sex offense and a consecutive term of 16 to 29 months' imprisonment for his conviction for taking indecent liberties with a child.

Defendant entered oral notice of appeal.

## II.    Discussion

Defendant raises two issues on appeal: 1) whether the trial court committed plain error "by allowing testimony of the alleged abuse of Brittany, in violation of

Rule[s] 404(b) and 403," and 2) whether "the trial court erred by allowing a police officer to testify to an inadmissible lay opinion."

## A. Evidence of Other Crimes, Wrongs, or Acts

Defendant's first argument is that the trial court committed plain error pursuant to both Rule 404(b) and 403 by admitting testimony regarding his abuse of Brittany. We disagree.

### 1. Rule 404(b)

### a. Standard of Review

In criminal cases, certain evidentiary and instructional issues that were not properly preserved by objection at trial and that are not otherwise "deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4).

Defendant concedes that "after challenging the anticipated testimony in a pretrial hearing, defense counsel failed to renew the objection at trial." Now, Defendant "specifically and distinctly contend[s]" that the admission of testimony regarding his sexual abuse of Brittany amounted to plain error, and he seeks plain-error review. *Id.*

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Thompson*, 265 N.C. App. 576, 579, 827 S.E.2d 556, 559 (2019) (citation omitted). "For our Court to find that an error was

fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (cleaned up). "Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up).

**b. Analysis**

Defendant argues that "[n]ot only was there nothing that made the incident with Brittany sufficiently similar to justify its admission under [Rule] 404(b), but the factually distinct and legally significant age difference between Brittany and Kasey at the time they testified [that Defendant] touched them makes these matters significantly different." The State maintains that "[r]ather than focusing on the two-year age difference between Kasey and Brittany, or the elements of the statutory charges, this Court is required to focus on the similarities between a prior sexual act and the act giving rise to the charged offense rather than the differences." We agree with the State.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023). "Rule 404(b) is a rule of inclusion of relevant evidence with but one exception, that is, the evidence must be excluded if its *only* probative value is to show that the defendant has the propensity or disposition to

commit an offense of the nature of the crime charged." *Thompson*, 265 N.C. App. at 579, 827 S.E.2d at 559 (cleaned up). Thus, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." *Id.* (citation omitted).

Our Supreme Court "has been liberal in allowing evidence of similar offenses in trials on sexual crime charges." *State v. Frazier*, 344 N.C. 611, 615, 476 S.E.2d 297, 300 (1996). "The test for determining whether such evidence is admissible is whether the incidents establishing the common plan or scheme are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of [N.C. Gen. Stat.] § 8C-1, Rule 403." *Id.* at 615, 476 S.E.2d at 299.

"Prior acts are considered sufficiently similar if there are some unusual facts present in both crimes, although these facts need not rise to the level of the unique and bizarre." *State v. Lopez*, 295 N.C. App. 239, 244–45, 905 S.E.2d 272, 276 (2024) (cleaned up). "When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking." *Id.* at 245, 905 S.E.2d at 276–77 (cleaned up). "Nonetheless, our Supreme Court has permitted testimony as to prior acts of sexual misconduct which occurred more than seven years prior to the offenses for which the defendant was being tried." *Id.* at 245, 905 S.E.2d at 277 (cleaned up).

In the instant case, the trial court properly conducted a voir dire hearing to determine the admissibility of the State's proffered evidence of Defendant's May 2020 sexual abuse of Brittany. The court heard from Brittany, Kasey, and Det. Sisk. Det.

Sisk summarized the similar abuse that the girls sustained:

> **Q.** And in conducting your interviews[,] did you notice any similarities in the type of sexual assault?
>
> **A.** With both of them, there was digital touching on the body both over the clothes and under the clothes to the vagina. We have similarly aged children during this incident. We also have the location that's the same. And both children are freezing in fear. And happening with the different locations in the house, but living room and bedroom.

Following arguments from both attorneys, the trial court ruled on the admissibility of the evidence:

> The [c]ourt finds that in both instances[,] the alleged victims are young women who are members of the family; one a niece, one a stepdaughter. These occurred in the family home. All began with touching on the outside of the clothes. Proceeded to the inside of the clothes. These girls were in a similar age group.
>
> The [c]ourt finds that they are sufficiently similar. Their cases in -- in the form of the acts. Temporally, there are cases where the span has been five years between the acts and the [c]ourt has found that that was not too remote.
>
> Rule 404(b) is a rule of inclusion as opposed to a rule of exclusion. [The c]ourt finds that they are sufficiently similar to be admitted and the [c]ourt finds that while there is a prejudicial effect, it is not -- it does not substantially outweigh the probative value and I will give a limiting instruction that at least at this point they can only consider it for modus -- for knowledge or for plan.

When Kasey began to testify regarding Defendant's sexual abuse of Brittany, the court gave the following limiting instruction:

Members of the jury, any evidence that the [c]ourt's receiving into evidence tending to show that on or around this Mother's Day [in 2020,] that . . . [D]efendant may have touched [Brittany] is being received solely for the purpose of showing that there existed in the mind of . . . [D]efendant a plan, scheme, system or design involving the crime charged in this case.

If you believe this evidence, you may consider it but only for the limited purpose of a common plan or scheme or design.

The crux of Defendant's appellate argument—that Kasey "was around 9 when [Defendant] first touched her" while Brittany "was 17 when [Defendant] touched her"—ignores the fact that Defendant sexually abused both girls during their mid-teens. The trial court's reasoning that the "girls were in a similar age group" therefore was not error, much less plain error. *See Thompson*, 265 N.C. App. at 579, 827 S.E.2d at 559. Accordingly, Defendant's Rule 404(b) argument is overruled.

### 2. Rule 403

Defendant also contends that the trial court committed plain error by admitting testimony of his sexual abuse of Brittany because "[t]he unfair prejudice substantially outweighed any probative value of this evidence," maintaining that "the prejudice of Brittany's statement was in fact the State's entire case." We conclude that Defendant is not entitled to appellate review of this issue.

Even where evidence is deemed admissible for a "proper purpose" under Rule 404(b), Rule 403 nevertheless provides that such evidence may "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C.

Gen. Stat. § 8C-1, Rule 403. "It goes without saying that evidence probative of the State's case is always prejudicial to the defendant, but this is not the threshold for exclusion." *State v. Gillard*, 386 N.C. 797, 816, 909 S.E.2d 226, 248 (2024) (cleaned up). "Rather, it must be *unfairly* prejudicial in that it has an undue tendency to suggest decision on an improper basis." *Id.* (cleaned up) (emphasis added).

However, "plain[-]error review is unavailable for issues that fall within the realm of the trial court's discretion, such as Rule 403 determinations." *Id.* at 821, 909 S.E.2d at 251 (cleaned up); *see also State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000) (noting that our Supreme "Court has not applied the plain[-]error rule to issues which fall within the realm of the trial court's discretion"), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

As Defendant acknowledges, he failed to preserve his Rule 403 argument by objecting to the challenged evidence at trial. "We, therefore, decline to address [D]efendant's Rule 403 argument for plain error." *Gillard*, 386 N.C. at 821, 909 S.E.2d at 251.

### B. Lay Opinion

Defendant next asserts that "the trial court erred by allowing a police officer to testify to an inadmissible lay opinion." He contends that he was prejudiced by the admission of this testimony in that "[w]ithout this testimony, there [w]as a reasonable possibility of a different outcome."

### 1. Standard of Review

"A trial court's ruling on the admissibility of lay opinion testimony is reviewed for abuse of discretion." *State v. Weldon*, 258 N.C. App. 150, 154, 811 S.E.2d 683, 687 (2018). "A trial court abuses its discretion if the ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (cleaned up).

### 2. Analysis

A lay witness's testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701. "Broadly speaking, opinion testimony is a belief, thought, or inference drawn from a fact." *State v. Gobal*, 186 N.C. App. 308, 317, 651 S.E.2d 279, 285 (2007) (cleaned up), *aff'd per curiam*, 362 N.C. 342, 661 S.E.2d 732 (2008).

While "a lay witness is usually restricted to facts within his knowledge, if by reason of opportunities for observation he is in a position to judge the facts more accurately than those who have not had such opportunities," then "his testimony will not be excluded on the ground that it is a mere expression of opinion." *State v. Wallace*, 179 N.C. App. 710, 715, 635 S.E.2d 455, 459 (2006) (cleaned up) (determining that a detective's testimony about the general characteristics of coaching displayed by sexually abused children constituted permissible lay-witness testimony), *appeal dismissed and disc. review denied*, 361 N.C. 436, 649 S.E.2d 896 (2007).

Additionally, our General Statutes provide that "[t]estimony in the form of an

opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.C. Gen. Stat. § 8C-1, Rule 704. As our Court recently reiterated, "Rule 704 does allow admission of lay opinion evidence on ultimate issues, but to qualify for admission the opinion must be helpful to the jury. Meaningless assertions which amount to little more than choosing up sides[ ] are properly excludable as lacking helpfulness under the Rules." *State v. Greenfield*, ___ N.C. App. ___, ___, 912 S.E.2d 213, 231 (2025) (citation omitted). "Furthermore, while opinion testimony may embrace an ultimate issue, the opinion *may not* be phrased using a legal term of art carrying a specific legal meaning not readily apparent to the witness." *Id.* (citation omitted).

At trial, the State called Det. Sisk, a BPD Special Victims Unit detective. During Det. Sisk's direct examination, the State asked: "Could you describe for the jury based on your training and experience, how children generally disclose [sexual abuse]?" Defense counsel objected on the ground that this question "clearly" called for "an expert opinion," and the trial court held a brief bench conference regarding the admissibility of Det. Sisk's testimony on this issue.

When the trial resumed, the court overruled defense counsel's objection and delivered the following limiting instruction to the jury:

> Members of the jury, this evidence is going to come in the form of an opinion. This is not an expert opinion. This is lay opinion. You may only consider the opinion of a witness that is rationally based on the perception of the witness and helpful to a clear understanding of the

testimony or a determination of a fact in issue.

Det. Sisk answered the State's question regarding children's disclosure:

> In my experience, I have done hundreds of interviews with children and adults. And disclosures come in various forms and a lot of that has to do with the totality of that individual's circumstances in life. It has to do with whether or not they are safe to tell, I guess, the terminology that we use.
>
>     If someone does not feel comfortable or feels that they don't have a support system, a lot of times they don't feel as though they're ready to disclose something.
>
>     I have had cases in my career where an individual has come in and is, you know, like a word vomit where everything comes out all at once. And I've had other ones where they don't feel as though they are ready to tell everything and they like to have multiple sessions of interviews.
>
>     I think as far as when you're asking any human being to recall an event in any way, I think that there is going to be pieces missing because our mind doesn't think literally. It kind of thinks a little bit more scrambled.
>
>     So I think a majority of human beings will say, oh, I remember that last piece or you may have part of it that comes in a little bit later or is left out. . . .

Defendant argues that "the clear implication of this testimony was that [Kasey] was acting 'consistently' with the profile of a sexually abused child,"[4] and he

---

[4] We note that in the section of Defendant's brief addressing the prejudice that Defendant alleges resulted from Det. Sisk's testimony, Defendant refers exclusively to Brittany, save for one quote from the State. Given the facts that he cites and the context of his argument, we conclude that he intended to refer to *Kasey* rather than *Brittany*.

was prejudiced thereby, in that "[w]ithout this testimony, there [w]as a reasonable possibility of a different outcome." We disagree.

While Det. Sisk's testimony *might* have addressed the ultimate issue of whether Kasey was acting consistently with the profile of a sexually abused child, as Defendant contends, such testimony *is permitted* pursuant to Rule 704. *Id.* Additionally, lay testimony regarding Det. Sisk's general experience as to disclosure by sexually abused children was "helpful to the jury" in its consideration of Kasey's differing accounts. *See id.* (citation omitted). Accordingly, this was not an abuse of discretion.

But even assuming, *arguendo*, that the trial court erred by admitting this testimony, we agree with the State that "the lay opinion testimony was not prejudicial given other testimony on the same issue [was] admitted without objection." Det. Underwood testified without objection that discrepancies in children's testimony are "not uncommon. Sometimes children don't understand the time frames. Especially when they say that it's happened a lot, they can't get the time frames completely correct." In making its determination as to the admissibility of Det. Sisk's testimony, the court noted that "[t]estimony has already come in to this effect through [Det.] Underwood without objection. She made numerous statements about [how] this is not unusual, . . . this is not uncommon for people or victims or alleged victims of sexual abuse."

Additionally, Ms. Gammon, the director for clinical services at CrossRoads,

was admitted as an expert in child sexual assault. She testified extensively—without objection—as to how children disclose sexual abuse as well as the process and factors involved in such disclosure:

> **Q.** . . . With regard to child sexual abuse, based upon your training and experience, what can you tell the [c]ourt with regard to how children disclose sexual abuse?
>
> **A.** There's a variety of factors that affect disclosing of sexual abuse. . . .
>
> . . . .
>
> **Q.** And what are those factors?
>
> **A.** If the perpetrator remains in the home, a child may disclose if they believe that there is a chance the perpetrator will leave. They are less likely to disclose or have a false recantation if there's been other children in the family who have not been believed after a disclosure. . . .
>
> . . . .
>
> **Q.** And in your training and experience with children of sexual assault or sexual abuse, can you talk about once they have disclosed, I guess, the process of disclosure. Is it a one time event? Is it multiple or --
>
> **A.** The process of disclosure is very complex. If a child discloses and they have a non-offending supportive caregiver in the home, often times it's followed by a forensic interview if the individual has reported it to authorities.
>
> The forensic interview, the child may disclose just the bare minimum in order to make sure -- because they often love these perpetrators. They are people close to them. They're individuals that have cared for them, cared for other people in their family. It's not unusual for children to really, really feel a great deal of emotional

conflict around disclosing.

**Q.** Why is that?

**A.** There's a variety of factors. One, they don't want the person to get in trouble. The person, the individual could be -- the alleged perpetrator is often the financial provider for the family in many cases. Sometimes there's domestic violence also in the household and the children have seen it. Oftentimes children are threatened that someone will come to harm if they disclose. And so if they tell the bare minimum they just want the abuse to stop. They just want to stop being abused.

    . . . .

    Many times children will disclose a little bit more, particularly, again, if they have a supportive non-offending caregiver or they're out of the home where the perpetrator lived.

**Q.** Now, you said they'll disclose a little more if they have a supportive non-offending caregiver.

**A.** Uh-huh. Yes ma'am.

**Q.** What effect would it have on a disclosure if the -- there isn't the support from a caregiver?

**A.** A child will likely say that they are fine and minimize the abuse. Sometimes they over compensate to try and fix things in the family.

    . . . .

**Q.** Can you tell me what, if any, effect would be on a disclosure if a child discloses and is not believed?

**A.** If a child discloses and is not believed, oftentimes they will say I'm sorry, I just made it up. Just made it up. Because at the end of the day, children love their parents

and they believe that their -- in my experience and in the research, many times there are parents that may partially believe. However, their treatment of the child changes slightly and the child notices and they do not like it. They don't want their parent to be upset with them so they will recant or minimize and say, oh, I was -- the individual just rubbed against my chest or something of that nature. However, there is a boundary a kid -- a child finally reaches when the abuse becomes too much.

**Q.** When that boundary is reached, what, if any, effect does it have on disclosure?

**A.** When that boundary is reached, whatever that boundary is for that child, they're going to disclose no matter what because the abuse has to stop. . . .

"A defendant wishing to overturn a conviction on the basis of error relating to non-constitutional rights has the burden of showing a reasonable possibility that a different result would have been reached at trial absent the error." *State v. Buie*, 194 N.C. App. 725, 733, 671 S.E.2d 351, 356 (citation omitted), *appeal dismissed and disc. review denied*, 363 N.C. 375, 679 S.E.2d 136 (2009); *see also* N.C. Gen. Stat. § 15A-1443(a). Given the testimony of Det. Underwood and Ms. Gammon regarding the general characteristics of disclosure by a sexually abused child and the factors that affect such disclosure, we cannot conclude that Defendant has shown "a reasonable possibility that a different result would have been reached at trial." *Buie*, 194 N.C. App. at 733, 671 S.E.2d at 356 (citation omitted). For all of the above reasons, Defendant's argument is overruled.

## III. Conclusion

For the foregoing reasons, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judges GRIFFIN and FLOOD concur.

Report per Rule 30(e).